## GERALD L. SHARGEL

GERALD L. SHARGEL
HENRY E. MAZUREK
DANIELLE B. SHALOV

LAW OFFICES

570 LEXINGTON AVE., 16TH FLOOR
NEW YORK, NEW YORK 10022
TEL: 212.446.2323
FAX: 212.446.2330
info@shargellaw.com

June 29, 2005

**By Federal Express and
Facsimile**

The Honorable Denis R. Hurley
United States District Court
Eastern District of New York
United States Courthouse
934 Federal Plaza
Central Islip, New York 11722

    Re:    *United States v. Isaac Toussie,* Nos. 00-CR-20, 02-CR-1356 (DRH)

Dear Judge Hurley:

    We write on behalf of defendant Isaac Toussie in reply to the Government's cursory opposition to Mr. Toussie's Motion for Early Termination of Supervised Release. The Government's opposition misstates the legal standard applicable to the motion and fails to address any of the factors referenced in the relevant statute at 18 U.S.C. § 3583(e)(1) and Mr. Toussie's corresponding individual conduct and circumstances.

    We also request the opportunity for oral argument on this matter to help clarify any issues that the Court may have related to the facts asserted and the legal standard to be applied.

### The Government Misstates the Legal Standard Applicable to Motions for Early Termination of Supervised Release Pursuant to 18 U.S.C. § 3583(e)(1)

    In its opposition letter, the government relies upon a single district court case for the proposition that this Court only has authority to discharge a term of supervised release "to 'account for new or unforeseen circumstances' not contemplated at the initial imposition of supervised release." United States v. McKay, 352 F.Supp.2d 359, 360 (E.D.N.Y. 2005) (Spatt, J.) (quoting United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997)). The government then concludes – without reference to the facts and conduct by Mr. Toussie presented in his motion – that "Isaac Toussie's conduct while in prison, and his post-incarceration charitable conduct, which appears to consist largely of offering

GERALD L. SHARGEL

financial support to various organizations and individuals, is not so 'exceptional' or 'unusual' as to meet the standard for early termination of supervised release discussed in the case law." (Gov. Opp. Letter, 6/20/05, at 2).

The "case law" referred to by the government actually stands for the proposition that the plain language of 18 U.S.C. § 3583(e)(1) instructs a district court to review several factors upon a motion to terminate a term of supervised release. See Lussier, 104 F.3d at 34-35. These factors include, *inter alia*, the original offense conduct, characteristics of the defendant, and the need for continued corrective action. See 18 U.S.C. § 3553(a). These factors are the same that the Court must consider in determining the initial sentence. Contrary to the government's belief, they do not become irrelevant upon a later motion for early termination of supervised release. See e.g., United States v. Clark, No. 94 CR 643-02 (CSH), 2004 WL 2978281 (S.D.N.Y. Dec. 20, 2004) (Haight, J.) (granting early termination of supervised release based on defendant's "particular role in the offense of conviction, his prompt acknowledgment of guilt and cooperation with law enforcement officers, his exemplary conduct while on supervised release").

The government relies exclusively upon Judge Spatt's decision in McKay, 352 F.Supp.2d at 360-61, to claim that this Court only has authority to review Mr. Toussie's "conduct while in prison, and his post-incarceration charitable conduct," (Gov. Opp. Letter, at 2), and determine whether it was so "exceptional" or "unusual" to warrant granting early termination of supervised release. The government's position is based on a misreading of Judge Spatt's decision. In McKay, Judge Spatt quotes a single passage from the Second Circuit's decision in Lussier, stating: "Early discharge is appropriate 'to account for new or unforeseen circumstances' not contemplated at the initial imposition of supervised release." McKay, 352 F.Supp.2d at 360 (quoting Lussier, 104 F.3d at 36). However, this quote from Lussier is taken completely out of context.

Significantly, the passage in Lussier, which Judge Spatt quoted in McKay, is mere dicta. See United States v. Garcia, -- F.3d --, --, 2005 WL 1444146, at *25, n. 2 (2d Cir. June 21, 2005) (Calabresi, J, concurring) ("Holdings – what is necessary to a decision – are binding. Dicta – no matter how strong or how characterized – are not.") The Second Circuit wrote merely to provide background on a district court's statutory authority to revoke, discharge, or modify terms and conditions of supervised release. See Lussier, 104 F.3d at 36. The narrow issue actually addressed and decided by the Second Circuit in Lussier was whether a district court had statutory authority to modify or rescind an order of restitution under the guise of a motion to modify terms of supervised release pursuant to 18 U.S.C. § 3583(e)(2), when the issue of the lawfulness of the restitution order was not taken up on direct appeal or in a collateral *habeas* petition.

GERALD L. SHARGEL

The full passage in Lussier, from which Judge Spatt took only excerpts, reads as follows:

> Section 3583(e) provides the district court with retained authority to revoke, discharge, or modify terms and conditions of supervised release following its initial imposition of a supervised release term in order to account for new or unforeseen circumstances. Occasionally, changed circumstances – *for instance,* exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release – will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a).

Lussier, 104 F.3d at 36 (emphasis added). In this passage, the Second Circuit was merely offering a set of examples of how the statute could be applied and how these examples differed from a legal challenge to rescind an order of restitution. Compare United States v. Norgaard, 357 F.Supp.2d 1274 (W.D. Wash. 2005) (granting motion for early discharge of supervised release after conducting thorough analysis of factors under Section 3553(a), the conduct of the defendant since the initial sentencing hearing, and the interests of justice).

The Lussier court did not create a bright-line test that requires a district court to find "exceptionally good behavior" during the period of incarceration or post-incarceration before discharging a defendant from supervised release. Of course, this factor would be supportive of such a finding, but does not replace the statutorily required analysis of the Section 3553(a) factors and an independent determination of what is "in the interest of justice." 18 U.S.C. § 3583(e)(1).

In sum, the plain language of Section 3583(e)(1) provides this Court with the legal "standard" that applies to this motion, and as explained in detail in Mr. Toussie's original motion papers, an analysis of the referenced Section 3553(a) factors, Mr. Toussie's post-sentencing conduct, and the interests of justice provides this Court with more than ample justification to discharge Mr. Toussie from his term of supervised release at this time.

GERALD L. SHARGEL

## Mr. Toussie's Conduct During Incarceration and During the First Year of Supervised Release Consisted of Exceptional Acts of Volunteerism That Had Little to Do With Financial Contributions

Contrary to the government's summary assertion (see Gov. Opp. Letter, at 2), Mr. Toussie's post-sentencing conduct consisted less of financial contributions than actual acts of charity, utilizing the benefits of his education and training to help others.

The government completely ignores the conduct outlined in Mr. Toussie's initial motion papers, particularly the extraordinary letter from over a dozen inmates at the Federal Correctional Institution at Otisville, where Mr. Toussie was incarcerated. (See Toussie Notice of Motion, May 17, 2005, at Ex. B). Mr. Toussie not only exhibited "model conduct while in prison" (Gov. Opp. Letter, at 1), but clearly went above and beyond anything that could be expected of an inmate. Mr. Toussie did not simply avoid disciplinary infractions or enroll in education and training classes while in custody (which should be expected of any inmate), but rather he took the exceptional initiative to better the lives of his fellow inmates. Mr. Toussie used his five month prison sentence to develop and teach practical training and education courses for interested inmates. (See Notice of Motion, Ex. B). He donated his time and educational background, and exhibited incredible courage to challenge his fellow inmates to learn practical skills, such as financial planning and personal account management. He made the considerable effort to convince a typically inflexible prison administration to allow him to be creative and helpful to others during his period of incarceration. In the context of a prison's bureaucracy, this alone was no easy task.

In the last year since his release from custody, Mr. Toussie has continued to donate his time and expertise to worthwhile causes. His greatest achievement in the past year was to support a program within the Veterans of Foreign Wars ("VFW") organization for the purchase, collection and distribution of pre-paid telephone cards to enlisted military personnel in Iraq and Afghanistan. (See Notice of Motion, Ex. F). Mr. Toussie's efforts went well beyond donating money. He also participated in fundraising activities and marketing for the program.

Mr. Toussie also provided the Court in his original motion papers with a letter from Harold Shamah of the local Jewish charitable organization, Bikur Cholim, which is part of the worldwide charity, H.I.S. International. (See Notice of Motion, Ex. L). In Mr. Shamah's letter commending Mr. Toussie for his "time and support" of the organization, Mr. Shamah expressly noted: "Beyond your continuous monetary contributions which are themselves noble, *your repeated conversations with me about strategies and methods to raise money have been very helpful.*" (Id.) (emphasis added). Mr. Toussie's

GERALD L. SHARGEL

Hon. Denis R. Hurley<br>
June 29, 2005<br>
Page 5 of 6

donation of his time and training is repeated in many of the letters from charities and co-worker or customer families that Mr. Toussie has supported over the years. Accordingly, the government's characterization of Mr. Toussie's charitable efforts as largely financial contributions is wholly unfounded.

Mr. Toussie's exceptional character was also recently displayed by his extraordinary efforts to assist the family of one of his co-workers in providing some last moments of happiness to a young child with terminal cancer. Mr. Toussie has long been a supporter of a group called "Hole in the Wall Gang" Camps, Inc., which is a nonprofit organization that has several residential youth camps throughout the country and Europe for children with terminal diseases. (See Notice of Motion, Exs. H and I). Mr. Toussie used his relationship with this organization and offered his own resources in support of his co-worker's niece. This is the same kind of initiative and selflessness that Mr. Toussie displayed early in life when he anonymously established a charitable fund on behalf of a fellow high school student who had suffered a paralyzing spinal cord injury during a school diving accident. (See Notice of Motion, Ex. O, Letter of Andrew Akerman, M.D.). Mr. Toussie's efforts enabled the injured student to attend a specialized rehabilitation center in California, and today that student has overcome his physical handicap and is a successful medical doctor. (Id.).

Mr. Toussie provided the Court with many more examples of his character and recent conduct in his original motion papers. He also reminded the Court of his particular role in the offense conduct in his underlying case, his prompt acknowledgment of guilt and cooperation with law enforcement, and the lack of any other blemishes on his otherwise commendable life.

The interests of justice in this case would best be served by avoiding further public expense in the continued supervision of Mr. Toussie and instead redirecting limited Probation Department resources to those cases where supervision is more urgently needed. (See Isaac Toussie PSR, ¶ 75, informing Court that it may use its discretion to depart downward and not impose term of supervised release in Mr. Toussie's case). Mr. Toussie's conduct and characteristics combine to make out the "occasional" case where early termination of supervised release is warranted.

For the reasons cited in Mr. Toussie's original motion papers and herein, we respectfully request this Court to grant Mr. Toussie's motion and discharge him from his remaining term of supervised release.

Respectfully submitted,<br><br>
Gerald L. Shargel<br>
Henry E. Mazurek

GERALD L. SHARGEL

Hon. Denis R. Hurley
June 29, 2005
Page 6 of 6

cc:    A.U.S.A. Geoffrey Kaiser (by facsimile)
       Michelle Staffa, U.S.P.O. (by Federal Express)